UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS           WESTERN DIVISION

| | |
|---|---|
| ESTATE. OF JOSE R. FELICIANO, )<br>By and through Jose L. Feliciano and )<br>Migdalia Rosado, as Administrators of )<br>The Estate of Jose R Feliciano, )<br>                          Plaintiff )<br>vs.                                )<br>                                )<br>KEVIN A. MILES,               )<br>LEROY HOLDING COMPANY, INC., )<br>and SLC TRANSPORTS, INC.,     )<br>                       Defendants ) | Civil No. 03-30.308-MAP |

## PLAINTIFF'S MOTION IN LIMINE WITH RESPECT TO THE SCOPE OF DEFENDANTS' EXPERT'S TRIAL TESTIMONY

NOW COMES the Plaintiff, the Estate of Jose R. Feliciano, and requests this Honorable Court to limit the scope of the Defendants' Expert's Testimony by precluding said expert from testifying as to the following:

1. The expert's opinion as to whether the decedent, Jose R. Feliciano, was in the breakdown lane or the travel lane at the time of the accident which is the subject of the Plaintiff's Complaint.

2. The expert's opinion as to whether Defendant Kevin Miles caused the truck he was operating on February 11, 2003 to enter the breakdown lane of Interstate 90 prior to or at the moment of striking the decedent.

3. The expert's opinion regarding the cause of the accident which is the subject of the Plaintiff's Complaint.

In support of this Motion, the Plaintiff submits the following memorandum of law.

### Background

On February 11, 2003, Jose R. Feliciano (hereinafter referred to as the "decedent") was struck and killed on Intestate 90 by a tractor trailer truck (hereinafter referred to as the "truck") operated by Kevin A. Miles (hereinafter referred to as "Miles") while Miles was in the course of

his employment for Defendant SLC Transports, Inc. The tractor trailer truck was owned by Defendant Leroy Holding Company, Inc.

The instant action has been brought by the decedent's estate against Miles, the Defendant employer and the Defendant truck owner. The Defendants disclosed Trooper John Jakubowski (hereinafter referred to as the "expert") as their expert witness to testify in the trial of this action. On January 20, 2005, the expert's deposition was conducted in Springfield, Massachusetts (please refer to Exhibit A, a copy of the transcript of the expert's deposition).

The Plaintiff brings this Motion to limit the extent of the expert's trial testimony. Specifically, the Plaintiff seeks to preclude the expert from testifying regarding the following:

1. The expert's opinion as to whether the decedent, Jose R. Feliciano, was in the breakdown lane or the travel lane at the time of the accident which is the subject of the Plaintiff's Complaint.

2. The expert's opinion as to whether Defendant Kevin Miles caused the truck he was operating on February 11, 2003 to enter the breakdown lane of Interstate 90 prior to or at the moment of striking the decedent.

3. The expert's opinion regarding the cause of the accident which is the subject of the Plaintiff's Complaint.

### Rule of Law

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court focused upon the admissibility of scientific expert

testimony. The Court notes that such testimony is admissible only if it is both relevant and reliable. The Court states that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id., at 597, 113 S.Ct. 2786.* The Court also discusses certain more specific factors, such as testing, peer review, error rates, and "acceptability" in the relevant scientific community, some or all of which might prove helpful in determining the reliability of a particular scientific "theory or technique." *Id., at 593-594, 113 S.Ct. 2786.* In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999), the Supreme Court expanded the *Daubert* holding to testimony based on technical or other specialized knowledge.

In determining the admissibility of expert testimony, the district court must ensure the evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).* A reliable expert's opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inference must be derived using scientific or other valid methods. *Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir.1999).*

In *Reed v. Canada Dry Corporation*, 5 Mass.App.Ct. 164 (1977), the Court held that an expert who testified about the path of a vehicle should not have been permitted to testify as to his opinion where his opinion was based primarily upon photographs and secondarily on testimony because the expert's opinion was merely an inference that could be readily understood by the jury without the assistance of an expert.

### Analysis

In the case at bar, the expert states that he believes that the more possible cause of the accident was the decedent stepping or stumbling into the travel lane from the breakdown lane.

The expert further testifies that this opinion is really only a possibility, but a stronger possibility than the truck entering the breakdown lane. See Exhibit A, page 107, lines 15-21; page 109, lines 1-23 through page 110, lines 1-6; page 146, 13-23 through page 147, lines 1-14. Later in his testimony, he opines that it is more likely than not that Miles was operating his truck within the travel lane at the time of the accident. See Exhibit A, page 166, lines 7-9. As outlined below, the expert's opinions are not admissible because said opinions and testimony lack the foundation necessary for expert witness testimony pursuant to F.R.E. 702, are based upon speculation and belief, and are merely inferences which may be readily understood by the jury without the assistance of an expert.

The expert's opinions fail to meet the standards of reliability required by F.R.E. 702 in at least three ways. First, the expert's testimony is not based on scientific, technical or other specialized knowledge. The expert admits that he did not find any physical evidence that would support where the decedent was standing at the time the decedent was struck. See Exhibit A, page 107, line 23 through page 108, lines 1 through 3; page 169, lines 1-8. The expert further admits that he does not know the point of impact between the tractor trailer truck and the decedent. See Exhibit A, page 144, lines 13-17. He admits that his opinions are based upon omissions in the witness statements and not upon affirmative statements or physical evidence. See Exhibit A, page 127, lines 1 through 23; page 149, lines 15-23.

Second, the expert's opinions do not meet the standards of F.R.E. 702 because his opinions are not based upon sufficient facts or data. Instead, his opinions are based upon precisely the opposite, meaning the lack of facts or data. During the expert's deposition, he provided four assumptions upon which he based his opinions about the accident. In sum, the expert bases his opinions upon omissions from witness statements and assumptions he makes

about those omissions instead of facts that he obtained in the course of his reconstruction. See page 147, lines 6-18. The following will address the four assumptions he states he uses in arriving at his conclusions.

One, the expert assumed that a witness behind the truck would have made a mental note of the truck being in the breakdown lane and reported that to police. See Exhibit A, page 147, lines 21-23 through page 148, lines 1-13. The expert uses the aforementioned assumption as a basis to conclude that the truck did not likely enter the breakdown lane. See Exhibit A, page 150, lines 1-5. However, none of the witnesses reported the position of the decedent on the roadway at the time of the accident either. See Exhibit A, page 149, lines 15-23. The expert never asked any witness further questions about the accident to confirm his assumptions as fact. See Exhibit A, page 149, lines 1-23 through page 150, lines 1-5. Therefore, the expert has insufficient facts about the location of both the truck and the decedent to arrive at an opinion regarding the location of the truck at impact with the decedent.

Two, the expert assumes that Pablo Morales, a witness to the accident, would be able to distinguish the sound of a truck striking a rumble strip from other noises in the area of the accident. See Exhibit A, page 154, lines 11-22. However, he admits that the rumble strip is designed for the operator of a car to hear the sound and not for someone standing outside the vehicle that hits the rumble strip. See Exhibit A, page 155, lines 1-12. The expert has no training in sound levels, sound decibels and/or ambient noise levels. See Exhibit A, page 157, lines 13-19. Most significantly, the expert further admits to never having tested the sound levels in the area of the accident, and therefore has no empirical data to determine whether someone standing in the breakdown lane in the area of the accident would be able to hear and distinguish the sound of the truck hitting the rumble strip. See Exhibit A, page 155, lines 13-15. Therefore,

the expert's opinions are not based upon sufficient facts or data regarding the sound in the area at the time of the accident to arrive at the opinions that Morales would have heard the sound, distinguished from other noise in the area, and reported this to the police.

Three, the expert assumes that Morales would have made a mental note that the truck was perilously close to the car and reported this to police. See Exhibit A, page 150, lines 7-23 through page 151, lines 1-11. However, Morales was not looking in the direction of the truck as it approached prior to the accident, and only took note of the position of the truck when it struck the decedent. Furthermore, Morales' statement to police indicates that he heard a noise coming from the position the decedent was standing to change the driver's side rear tire, indicative that the truck struck him in close proximity to the position of the disabled vehicle. See Exhibit A, page 151, lines 12-23, through page 152, line 1. As stated above, the expert found no physical evidence to determine whether the accident occurred in the breakdown lane or the travel lane. See also Exhibit B, the expert's reconstruction report. The expert's diagram of the accident has an oval with a label "Vicinity of Impact," and this oval encompasses what is also labeled as the rumble strip and fog line. See Exhibit B. The expert arrives at a conclusion that the impact occurred in close proximity to the driver's side of the car, making an omission in Morales' statement regarding the closeness of the truck irrelevant by the expert's own admission. Therefore, the third assumption the expert makes is not founded upon the actual evidence and facts presented to him, and is insufficient evidence upon which he may base his opinions.

Four, the expert assumes that the "thump" heard by Morales was the sound of the decedent being struck by the truck. See Exhibit A, page 152, lines 17-20. However, Morales' states that he heard the thump, then he turns and sees the decedent being struck by the truck. See Exhibit A, page 151, lines 12-23 through page 152, lines 1-23 through page 153, lines 1-5.

Therefore, the assumption is not supported by the facts as presented to the expert.

Third, the expert's opinions are inadmissible pursuant to F.R.E. 702 because his opinions are not the product of reliable principles and methods, nor does the expert apply reliable principles and methods to the facts of the case. The expert states that he relies primarily on the statements obtained from witnesses in reaching his opinion. See Exhibit A, page 128, lines 1 through 23 through page 129 lines 1 through 3. The expert admits that none of the statements he examined in reaching his opinion state where the decedent was standing at the time the decedent was struck. See Exhibit A, page 127, lines 1 through 23; page 149, lines 15-23. The expert further states that he does not consider witness statements to be as reliable as physical evidence in reconstructing an accident. See Exhibit A, page 74, lines 8-23 through page 75, lines 1-23 through page 76, lines 1-2. The expert does not use any mathematical calculations, analysis diagrams or photographs, nor does he analyze the facts he was able to obtain through any scientific methods. Therefore, the expert's opinions are not the product of reliable scientific principles and methods, but rather the product of simple deduction from the witness statements.

The expert's opinion is based upon speculation and belief. As stated above, the expert's opinion is based entirely upon assumptions the expert makes from omissions he believes to exist in the witness statements. However, these assumptions are not based upon any education, training or specialized knowledge he has as an accident reconstructionist, but rather based upon the common experiences the jury will share of observing traffic on the road. For example, the expert admits that his assumption that the sound of a rumble strip could be heard is based upon his "years of real world observations and experience" (Exhibit A, page 156, lines 1-6). This assumption, as all assumptions the expert makes in reaching his opinions, is merely an inference drawn by the expert without any scientific, technical or specialized knowledge, nor is this

assumption founded upon reliable scientific methods and principles. As we know, he did not test the actual sound levels in the area to reach this opinion. Instead, the expert's opinion is his own speculation and belief that Morales could hear and distinguish the sound of a truck striking a rumble strip above and from the other noises in the area at that time.

The expert's opinion is merely an inference which may be readily understood by the jury without the assistance of an expert. As stated above, the expert's opinions are not based upon any scientific, technical or specialized knowledge. Furthermore, his opinions are not based upon any scientific, technical or specialized knowledge through reliable principles or methods. Instead, as stated above, his opinions are purely speculation and his personal beliefs. By his own admission, his opinions are based upon his "years of real world observations and experience." In turn, the jury may use its real world observations and experience to arrive at the same conclusions to which the expert is testifying. Therefore, the expert's testimony should not be permitted as it is merely an inference which may be readily understood by the jury without the assistance of an expert.

Lastly, the expert's opinions should not be admitted at trial because the probative value of said opinions is outweighed by the prejudicial effect upon the plaintiff. The expert does not have an opinion as to whether a preponderance of the evidence shows that the decedent was struck either in the travel lane or the breakdown lane. The expert's investigation into the accident was focused on determining the point of impact between the truck and the decedent to determine whether criminal charges against Miles should be brought. See Exhibit A, page 162, lines 8-16. The expert's opinions regarding the accident are made in light of the probable cause standard in criminal law, which requires more than the civil standard of a preponderance of the evidence. See Exhibit A, page 162, lines 16-23. The expert does not have an opinion as to whether Mr.

Miles was negligent in accordance with the civil standard of a preponderance of the evidence. See Exhibit A, page 165, lines 8-14; page 166, lines 11-23 through page 167, lines 1-2; and page 169, lines 9-18. Because the expert does not give an opinion in light of the preponderance of the evidence standard, his testimony is irrelevant and prejudicial.

## Conclusion

The expert's opinion is not based upon any scientific or technical reconstruction of the events. The expert has admitted that his opinion is neither based on any physical evidence nor upon the use of any scientific formulas nor upon technical measurements or data gathered at the scene. Instead, his opinion is based on the omissions from statements made by witnesses at the scene. Omissions are not facts, but rather assumptions of facts. The expert's opinions in this action are not founded upon any facts at all. Therefore, the expert's opinion is based upon guesswork, speculation, conjecture and his "real world experience."

The expert's opinion regarding the cause of the accident is not an expert opinion but rather an opinion which the jurors in this case may arrive at without the assistance of the expert. The expert's opinions do not meet the statutory requirement that his testimony assist the trier of fact by way of scientific, technical or specialized knowledge. Nor are his opinions based upon reliable scientific methods and principles. Therefore, the expert should be precluded from testifying about any opinion he has as to whether the decedent was in the breakdown lane or the travel lane at the time of the accident and any opinion the expert has as to the cause of the accident which is the subject of this action.

WHEREFORE, the Plaintiff, the Estate of Jose R. Feliciano, respectfully requests this Honorable Court to grant this Motion in Limine and issue an order precluding the defendants' expert from testifying regarding the following:

1. The expert's opinion as to whether the decedent, Jose R. Feliciano, was in the breakdown lane or the travel lane at the time of the accident which is the subject of the Plaintiff's Complaint.

2. The expert's opinion as to whether Defendant Kevin Miles caused the truck he was operating on February 11, 2003 to enter the breakdown lane of Interstate 90 prior to or at the moment of striking the decedent.

3. The expert's opinion regarding the cause of the accident which is the subject of the Plaintiff's Complaint.

> Respectfully submitted,
> By the Plaintiff,
> **The Estate of Jose R. Feliciano**
>
> _____
> Samuel M. Radner, Esq.
> The Haymond Law Firm, P.C.
> 999 Asylum Avenue
> Hartford, CT 06105
> (860) 728-5672
> BBO # 565988
> Plaintiffs Attorneys

Dated: 4/13/05

## **CERTIFICATION**

I, Samuel M. Radner, Esquire hereby certify that a copy of the foregoing was HAND DELIVERED to the following counsel and pro se parties of record on April 13, 2005:

Kevin G. Murphy, Esquire
Pessalano, Dusel, Murphy & Casartello, P.C.
115 State Street, 5th Floor
Springfield, MA 01103

_____
Samuel M. Radner, Esquire