UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTATE OF JOSE R. FELICIANO, )<br>By and Through JOSE L. FELICIANO )<br>and MIGDALIA ROSARIO, as )<br>Administrators of the Estate of Jose )<br>Feliciano, )<br>                      Plaintiffs )<br>                      )<br>                      )<br>          v. )<br>                      )<br>                      )<br>KEVIN A. MILES and SLC )<br>TRANSPORT, INC., )<br>                 Defendants ) | Civil Action No. 03-30308-KPN |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANTS'
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
(Document No. 50)
June 17, 2005

NEIMAN, U.S.M.J.

Pursuant to FED. R. CIV. P. 50(b), Kevin A. Miles ("Miles") and SLC Transport, Inc. ("SLC") (together "Defendants"), have renewed their motion for judgment as a matter of law against the estate of Jose R. Feliciano ("Feliciano") by and through the administrators of his estate ("Plaintiffs"). In essence, Defendants assert, post-trial, that Plaintiffs' claim for gross negligence, for which the jury awarded $85,000 in punitive damages, must fail because of insufficient evidence. Defendants do not challenge the remainder of the jury's verdict, in particular, its awarding Plaintiffs a total of $290,000 for Defendants' negligence. For the reasons which follow, Defendants' motion will be denied.

I. BACKGROUND

This matter, which was filed on December 19, 2003, involves the death of Feliciano, nineteen at the time, who was struck by SLC's tractor-trailer truck being driven by Miles. The facts, as presented at trial and viewed in a light most favorable to Plaintiffs, *see Mangla v. Brown Univ.*, 135 F.3d 80, 82 (1st Cir. 1998), show the following.

Miles was driving in the right-hand lane for eastbound traffic on the Massachusetts Turnpike as he approached a disabled vehicle with a man, later identified as Feliciano, standing on the driver's side of the vehicle. Miles saw the disabled vehicle and Feliciano when he was approximately one-quarter of a mile away. However, when he was one-eighth of a mile away, Miles stopped looking at the car and Feliciano. Rather, he started looking at a tractor-trailer truck to his left which was in the process of passing him. Miles continued to drive up the slight hill and slight curve at approximately sixty-five miles per hour.

As his truck was just about at the rear of the disabled vehicle, Miles remained concerned with the truck to his left, which then was approximately one-half of a length ahead of his own. Miles never observed Feliciano go into the travel lane. Nor did Miles know that he had struck Feliciano until another truck driver called him on his CB radio. Miles only saw a "flash" to his right, in his peripheral vision, and then jerked his wheel to the left. He thought the flash was a bird.

Stephen Moore, who was following Miles, testified that he observed Miles' truck close to the white fog line as it approached the disabled vehicle and that he saw Feliciano get struck while standing in the breakdown lane. In addition, Dr. Jack Sparks,

an expert offered by Plaintiffs, presented evidence that Miles had time to slow down during the last one-eighth of a mile and to stop if necessary. Dr. Sparks also presented evidence that Miles' truck struck Feliciano as he stood in the breakdown lane and that the truck was in the breakdown lane at impact. Dr. Sparks testified further that Feliciano was thrown approximately forty-three feet from the point of impact.

The trial lasted four days with two courts submitted to the jury: negligence and gross negligence.[1] The parties agreed on the jury instructions. The instructions with regard to gross negligence generally reflected the standards set out in *Altman v. Aronson*, 121 N.E.2d 505, 506 (Mass. 1919). *See also McConville v. Massachusetts Bay Trans. Auth.*, 852 F. Supp. 1, 3 (D. Mass. 1994). "Like negligence," the court explained in its instructions, "Plaintiffs have the burden of proving gross negligence liability by a preponderance of the evidence." (Instructions (Document No. 45) ¶ 44.) The court then explained as follows:

> Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. Some of the common indicia of gross negligence are deliberate inattention, voluntary incurring of obvious risk, impatience of reasonable restraint, or persistence in a palpably negligent course of conduct over an appreciable period of time.

(*Id.*) The court went on to instruct the jury about causation and punitive damages. (*Id.* ¶¶ 45-47.) These instructions, too, were agreed upon by the parties.

---

[1] The court found insufficient evidence for a third claim of wanton and reckless conduct to go to the jury.

As indicated, the jury found Defendant liable for negligence (in the amount of $290,000) and for gross negligence (in the amount of $85,000). The court entered judgment on May 23, 2005, and on May 25, 2005, Defendants renewed their motion for judgment as a matter of law.[2]

## II. DISCUSSION

A jury verdict may not be set aside under Rule 50(b) "except on a determination that the evidence could lead a reasonable person to *only one conclusion*." *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir. 1993) (citations and internal quotation marks omitted) (emphasis in original). Thus, Rule 50(b) relief is warranted only if the evidence "is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome." *Gibson v. City of Cranston*, 37 F.3d 731, 735 (1st Cir. 1994). *See also Murray v. Ross-Dove Co.*, 5 F.3d 573, 576 (1st Cir. 1993) (proper to allow motion where evidence "would not permit a reasonable jury to find in favor of the plaintiff on any permissible claim or theory"). In the court's view, Rule 50(b) relief is not warranted here.

Defendants' challenge is not without some force. The court itself hesitated before allowing the gross negligence question to go to the jury. Unfortunately for Plaintiffs, however, the court continues to believe that there was sufficient evidence for the jury to find gross negligence on Defendants' part.

---

[2] Pursuant to Rule 50(a), Defendants moved for judgment as a matter of law both at the close of the Plaintiffs' case and again at the close of all the evidence. Except for the court's dismissal of Plaintiffs' claim for wanton and reckless conduct, both motions were denied.

The caselaw varies as to what may or may not amount to gross negligence in the context of vehicle accidents. For example, Defendants attempt to distinguish the instant matter from *Davis v. Walent*, 449 N.E.2d 382 (Mass. App. Ct. 1983), where there was *sufficient* evidence of gross negligence. In *Davis,* an intoxicated driver traveling at excessive speed and engaging in unsafe maneuvers was found grossly negligent, although the case was "close." *Id.* at 389. By contrast, Defendants argue, Miles did not act with anything near such heightened negligence. Rather, Defendants maintain, Miles' driving was more akin to the situation in *Manning v. Conway*, 78 N.E. 401, 402 (Mass. 1906), in which a gross negligence verdict was reversed. As in *Manning*, Defendants assert, Miles was neither distracted by conversation, going too fast, nor deliberately inattentive.

For their part, Plaintiffs distinguish these cases as well as others relied upon by Defendants. For example, Plaintiffs describe *Manning* as coming from the "horse-drawn carriage era" and note that the court there actually praised the defendant's skillful maneuvering of his team of horses. In addition, Plaintiffs offer their own countervailing caselaw, for example, *Peck v. Garfield*, 862 F.2d 1 (1st Cir. 1988). There, in facts which Plaintiffs describe as substantially similar to those at bar, the accident occurred where the defendant had an unobstructed view of the highway of between 250 and 1,000 feet. *See id.* at 6. The defendant downshifted and began to brake when she saw a pedestrian crossing the road, was unable to enter the opposite lane due to oncoming traffic and, instead, struck the pedestrian. *See id.* at 2-3. The court determined that the jury could reasonably have concluded that the defendant

could have seen the decedent from approximately 500-600 feet away and that defendant's testimony that she did not see him until about 90 feet away could lead to a reasonable inference that she was inattentive for at least five seconds. *See id.* at 6. The court concluded that that period of inattentiveness on the defendant's part, while traveling sixty miles per hour, was enough for the jury to find gross negligence. *Id.*

In counterpoint, Defendants, citing still other cases, assert that neither inattention nor an operator's failure to perceive a vehicle or person on a public way amounts to gross negligence. *See, e.g., O'Rourke v. MacAllister*, 215 N.E.2d 794, 794 (Mass. 1966) (inattentive driver conversing with passengers struck vehicle); *Higgins v. Ricca*, 154 N.E.2d 356, 357 (Mass. 1958) (talkative driver with back seat passengers and resulting distraction); *Harvey v. Murphy*, 30 N.E.2d 854, 855-56 (Mass. 1941) (driver's failure to see hazard may have been only momentary); *Lynch v. Springfield Safe Deposit & Trust, Co.*, 200 N.E. 914, 914 (Mass. 1936) (operator failed to see the rear of a well lighted vehicle and struck it from behind); *Folan v. Price*, 199 N.E. 320, 321 (Mass. 1936) (driver who took eyes off the road for ten seconds not grossly negligent). Gross negligence, Defendants continue, is warranted only in more egregious situations, *e.g.*, where the driver enters an intersection at high rate of speed, does not heed warnings of passengers and loses control of the vehicle, *see Smith v. Murphy*, 46 N.E.2d 401, 401-02 (Mass. 1943); *Colby v. Clough*, 16 N.E.2d 30, 31 (Mass. 1938), or where the driver takes his eyes off the road for thirty seconds, *see Hanlon v. Westberg*, 29 N.E.2d 194, 195 (Mass. 1939), or where the driver is inattentive to the road for forty seconds while the vehicle travels a distance of 2,000

feet, *see Dinardi v. Herook*, 105 N.E.2d 197, 198-99 (Mass. 1952).

As is evident, the issues surrounding gross negligence are often quite fact-sensitive. Thus, comparisons of these various decisions, while somewhat useful, obviously do not control the unique facts of the instant case. *See Doherty v. Spano*, 146 N.E.2d 671, 672 (1958) ("It is seldom that any one factor or any one precedent will be wholly decisive.") (citation and internal quotation marks omitted). As the First Circuit has explained, "there is no hard and fast rule" for determining gross negligence, in the context of automobile accidents. *Peck*, 862 F.2d at 5. At best, the court explained, three elements are usually taken into consideration: "the speed of the vehicle, the circumstances and conditions at the site of the accident, and the length of any inattentiveness." *Id.* (citing, *inter alia Hallet v. Rimer*, 106 N.E.2d 427 (Mass. 1952)). "For example," the court continued, "only momentary inattentiveness may be gross negligence in a place of great danger or while traveling at high speed." *Id*. at 6. (citations omitted).

Here, in this court's estimation, these three factors provided the jury more than sufficient grounds to find gross negligence on Miles' part. The jury could reasonably have determined that Miles knew of the potential danger when he observed Feliciano standing outside a disabled vehicle. The jury could also have reasonably inferred that, despite the significant danger, Miles maintained his speed of sixty-five miles per hour rather than slowing down, that he took his eyes off Feliciano, and that he was inattentive to the situation for too long a period -- as much time as it took to traverse an eighth of a mile -- for him to have been merely negligent.

Two further points are worth noting, although they are by no means controlling. First, the jury found no comparative negligence on Feliciano's part. While such comparative negligence would have had no practical relevance to Plaintiffs' claim of *gross* negligence -- if comparative negligence were found, it would only have reduced or eliminated the *negligence* claim -- the lack of such may well have influenced the jury's consideration of Defendants' *gross* negligence. *Compare Peck*, 862 F.2d at 5-6 (where decedent's contributory negligence (albeit not a proximate cause of his death) did *not* preclude a finding of gross negligence). Second, the jury awarded relatively modest punitive damages for what it considered Defendants' gross negligence, thus exercising considerable restraint and recognizing, perhaps, the close nature of its decision. Indeed, Defendants make no claim that the punitive damages award was excessive, only that it was unsupported.

As in *Peck*, the question of gross negligence may have been close. But, again as in *Peck*, this court must heed the words of the Supreme Judicial Court: "Doubtless there may be cases so near the borderline that a tribunal whose duty it is to apply only legal principles cannot reverse the factual conclusion embodied in a verdict. The power so to do must be exercised with the utmost caution." *Peck*, 862 F.2d at 6 (quoting *Burke v. Cook*, 141 N.E. 585, 587 (Mass. 1923)). *See also Urico v. Parnell Oil Co.*, 552 F. Supp. 499, 500 (D. Mass. 1982) (party urging a court to set aside a jury verdict as against the clear weight of the evidence bears "a heavy burden"), *aff'd*, 708 F.2d 852 (1st Cir. 1983); *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1483 (1st Cir. 1994) ("A federal court may not set aside a jury verdict and direct the entry of a contrary verdict unless no reasonable jury could have returned a verdict

8

adverse to the moving party.").

Put simply, Defendants have failed to bear their heavy burden of convincing the court that they are entitled to judgment as a matter of law. The evidence was fully and adequately presented by both sides and the jury reasonably reached the verdict it did.

### III. CONCLUSION

For the foregoing reasons, Defendants' renewed motion for judgment as a matter of law is DENIED.

IT IS SO ORDERED.

DATED: June 17, 2005

                                              /s/ Kenneth P. Neiman  
                                            KENNETH P. NEIMAN  
                                            U.S. Magistrate Judge